### SCHEUERLE v. CONNER.

(Court of Appeals of District of Columbia. Submitted November 17, 1919. Decided January 5, 1920.)

#### No. 1269.

PATENTS ⬳81—EVIDENCE SHOWING REISSUE PATENTEE ENTITLED TO PRIORITY.

Evidence that the person to whom a reissue patent for polishing bifocal lenses had been issued was using a similar mechanism before the date of conception claimed for the opposing party, and the failure of such opposing party to testify in behalf of the concern owning his application, etc., *held* to show, contrary to the Assistant Commissioner's decision, that the reissue patentee was entitled to priority.

Appeal from a Decision of the First Assistant Commissioner of Patents.

Interference proceedings in the Patent Office between Theophilus D. Conner and Marie E. Scheuerle, administratrix of the estate of Henry A. Scheuerle, deceased. From a decision awarding priority to Conner, Marie E. Scheuerle appeals. Reversed.

A. E. Paige, of Philadelphia, Pa., for appellant.
V. H. Lockwood, of Indianapolis, Ind., for appellee.

SMYTH, Chief Justice. From a decision of the First Assistant Commissioner of Patents, awarding priority to Conner, in an interference, Scheuerle appeals. The invention relates to mechanism for polishing or abrading the major areas of bifocal lenses. A reissue patent emerged to Henry A. Scheuerle July 27, 1915, on an application filed June 8, 1915. He afterwards died, and the interest of his estate in the patent is represented by his widow, Marie E. Scheuerle, as administratrix.

Conner's application was filed May 25, 1912. There are four counts in the issue, of which count 3 is typical. It reads:

3. The combination with an annular rotary lap having a central recess, of a rotary holder for the surface to be abraded, means arranged to relatively rotate said lap and holder, and means maintaining the axes of said lap and holder in such angular relation that said recess spans the axis of said holder, in eccentric relation therewith, with said axes intersecting at a center of curvature of said surface, whereby said lap is prevented from abrading the axial region of said surface while it is caused to abrade an annular region of said surface concentric with the axis of said surface, but eccentric with the axis of said lap.

The case turns upon a question of fact. At the very outset we are confronted by these significant things: Conner refused to sign the preliminary statement made on his behalf; it was signed by one Rau, president of the Onepiece Bifocal Lens Company, which owns Conner's application. Conner—who was in Indianapolis when testimony was being taken there in this proceeding, a fact well known to the Lens Company—was not called as a witness in its behalf. It had the right to force his attendance, but it did not see fit to exercise it. This warrants the inference that he, in the judgment of counsel for the company, would not support the claims made in his name.

The earliest date of conception claimed for Conner in the first preliminary statement filed on his behalf is about February 1, 1911, but in an amended statement the date is moved back to August 1, 1910.

The witness Wall, an officer of Wall & Ochs, manufacturers of lenses, testified that in 1906 Scheuerle was employed by his establishment, and at that time "had knowledge of the manufacture of bifocal lenses." Brown, another witness, says that in the spring or summer of 1909 Scheuerle made an abrading tool for use in the preparation of bifocal lenses, and Henry A. Scheuerle, a practical optician, nephew of Scheuerle, the patentee, testified that his uncle was manufacturing bifocal lenses in 1909 at his residence with a mechanism the same as Exhibit K; that "he had several customers, his own patients that he refracted, that he supplied with these lenses." Margath, who seems to be an intelligent witness, supports him with respect to the use, by the elder Scheuerle, of a mechanism like Exhibit K. In short, a careful study of the record satisfies us that, to borrow the language of the examiner of interferences:

"It positively appears that as early as 1909 Scheuerle had made the abrading tool as illustrated in his reissue patent involved in this interference, and that during the Christmas holidays of the same year he had disclosed his method to others, and by February, 1910, had operated his tool and holder in the manner set forth in this issue, and had in 1911 actually sold lenses made thereby."

We do not think the part of the record sent up by the office in response to our writ of certiorari, issued at the instance of the party Conner, was necessary, and therefore the costs of it are taxed against Conner; this being in accordance with the terms of the order for the writ.

The decision of the First Assistant Commissioner is set aside, and priority of invention of the subject-matter in issue is awarded to Scheuerle.

Reversed.